

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CHARLES BRISTER | CIVIL ACTION: 04-3247 |
| VERSUS | SECTION: R-VANCE |
| SCHLINGER FOUNDATION, ET AL | MAGISTRATE: 1 - SHUSHAN |

### MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

**NOW INTO COURT**, through undersigned counsel, come defendants, **The Schlinger Foundation; Fun Karts, Inc.; Patrick K. Reso; and William Rogers**, who offer the following reasons why this Court should deny the plaintiff's Motion to Remand this action to state court.

## FACTUAL BACKGROUND

The plaintiff, Charles Brister, is shareholder of Karts International, Inc. ("KII")[1], formerly a publicly-traded company. Brister also served as President and Chairman of the Board of KII at one time. Mr. Brister is aggrieved because the value of his stock in KII declined precipitously when KII went out of business.[2] Brister has named as defendants:

(1) two entities which were both shareholders of and creditors of KII (the Schlinger Foundation and Morgan Creek);

---

[1] Petition, Paragraph 4.
[2] The crux of the plaintiff's claim is stated in Paragraph 32 of the Petition where he alleges his damages. In that paragraph, he makes it plain that his only claim is for the loss of value of his stock in KII from June, 2002, to December 31, 2002. In fact, the company was insolvent long before June 2002, under the leadership of *plaintiff* while he was President or Chairman of the Board of KII.



(2)   two members of the board of the Schlinger Foundation (defendants Dr. Evert Schlinger, Sr.; and Mr. Evert Schlinger, Jr. a/k/a "Pete" Schlinger)

(4)   an individual who plaintiff claims formed Morgan Creek Corporation (Russell Foster);

(3)   the company which was assigned the secured debts owed to Schlinger and Morgan Creek, and foreclosed on KII based upon these just debts (Fun Karts, Inc.);

(4)   a former officer and director of KII (Timotheous Pettinger a/k/a Timotheous benHarold);

(5)   a former officer of Fun Karts, Inc. (John Pettinger);

(6)   attorneys for the Schlinger Foundation and Fun Karts, Inc. (Patrick Reso and William Rogers) who accomplished the foreclosure; and

(7)   a religious organization formed by Pete Schlinger which Brister claimed received some illicit benefits from KII ("the Office of Presiding Almoner of Living Waters").

KII owed debts to the Schlinger Foundation and Morgan Creek. These secured debts were legitimate obligations of KII, comprised of several million dollars lent to KII and never repaid, and represented by eighteen certain promissory notes in the aggregate principal amount of $6,849,152.00 (referred to hereinafter as the "Investor Loans"). Plaintiff, as President of KII at the time the debts were incurred—and the actual signatory on most of the notes—is certainly aware that the debts were genuine.

KII's business deteriorated to the point that KII could not pay its debts, including the Investor Loans, as they matured. As part of an overall effort by the investor-creditors to minimize losses, they assigned the Investor Loans to Fun Karts, Inc., a corporation organized for the sole purpose of holding and administering the Investor Loans.

2

The plaintiff alleges in Paragraph 22 of the Petition that Patrick K. Reso was employed by The Schlinger Foundation to "transfer" all of KII's assets into a newly created company. Actually, what Mr. Reso was employed to do was *foreclose* on KII's assets on behalf of The Schlinger Foundation, a major creditor of KII. It is true, however, that the Schlinger Foundation elected to form a new entity (Fun Karts, Inc.) to facilitate the foreclosure.

Mr. Reso worked at all times as an attorney for The Schlinger Foundation and Fun Karts, Inc. He was never employed by KII. In fact, Mr. Reso was employed for the specific purpose of suing KII and foreclosing on its assets.

In July, 2002, movable assets belonging to KII were seized and sold at Sheriff's Sale. The purchaser at the Sheriff's Sale was Fun Karts, Inc. In October, 2002, KII assigned its leasehold interest in its manufacturing facility to Fun Karts, Inc., in partial satisfaction of the outstanding deficiency on the debt. Fun Karts, Inc. gave KII full credit for the fair value of all of the movables transferred to it by the Sheriff's sale and for the leasehold interest. Even in light of this credit, the outstanding balance on the debt today is still in excess of three million dollars.

In addition to Fun Karts, KII has other creditors who remain unpaid today, including some who have reduced their debts to judgment. KII ceased all operations in 2002 and is now defunct.

This suit was filed in state court on October 29, 2004 alleging violations of federal securities law and negligence. Defendants Patrick Reso and Fun Karts, Inc. were served with the suit on November 5, 2004 and were the first defendants served. On November 29, 2004, Defendants Patrick Reso and Fun Karts, Inc. filed a Notice of Removal and served it on opposing counsel. No other defendants had been served at that time.

## LAW AND ARGUMENT

Plaintiff has moved to remand this case to state court for both lack of jurisdiction and alleged procedural defects in the removal. The jurisdiction issues are (1) whether some parties were fraudulently joined to defeat diversity and (2) whether the complaint presents a federal question. The alleged procedural defects concern whether all necessary defendants joined in the removal. Each of these issues is addressed, in turn, below.

### Diversity of the Parties and "Fraudulent" Joinder – Inability of Plaintiff to Establish a Cause of Action as to the Louisiana Defendants

The plaintiff is domiciled in Louisiana. Two of the named defendants are domiciled in Louisiana: Patrick Reso and Russell Foster. Defendants will show that these defendants were improperly joined, thereby creating complete diversity.

The Fifth Circuit recognizes two ways to establish "fraudulent" joinder of non-diverse parties:

> (1) Actual fraud in the pleading of jurisdictional facts, or (2) Inability of the plaintiff to establish a cause of action against the non-diverse party in state court. *Smallwood v. Illinois Central Railroad Company*, 385 F.3rd 568, 573 (5th Cir. 2004) citing *Travis v. Irby*, 326 F.3rd 644, 646-47 (5th Cir. 2003).

It is the second type of fraudulent joinder which is present in this case in that the plaintiff has failed to establish a cause of action against either Mr. Foster or Mr. Reso. In such a case:

> The test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant. *Smallwood, supra*, at p. 573.

This wording of the rule is definitive. As the Fifth Circuit noted in *Smallwood, supra*:

> To reduce possible confusion, we adopt this phrasing of the required proof and reject all others, whether the others appear to describe the same standard or not. *Id.*

The Court then noted in a Footnote that:

> A mere theoretical possibility of recovery under local law will not preclude a finding of improper joinder. *Id.*, internal quotations and citations omitted.

Under this standard, then, the question for the Court is whether there is any reasonable basis to predict that the plaintiff might be able to recover against either Mr. Foster or Mr. Reso. The purported cause of action against each of these defendants is considered, in turn, below.

### Claim Against Russell Foster.

Plaintiff has alleged in his petition that Mr. Foster created the Morgan Creek Corporation[3]. The Petition also alleges that he was negligent in allowing Timotheous benHarold/Pettinger to exercise *de facto* control over Morgan Creek.

Morgan Creek was a creditor of KII. Like The Schlinger Foundation, Morgan Creek transferred its secured indebtedness to Fun Karts, Inc., which then foreclosed on KII. The debt of KII to Morgan Creek was a legitimate debt. There is nothing nefarious nor illegal about transferring a legitimate debt to a third party who can then foreclose and execute on the debt.

The mere fact that Mr. Foster may have created the corporation that owned the debt would in no way make him liable under any legal theory to the shareholders of the debtor corporation. Put another way, the incorporator (as such) of a corporation which is a creditor in a lending transaction owes no legal duty to the shareholders of the debtor corporation. Assuming for the sake of argument that Timotheous benHarold/Pettinger was controlling Morgan Creek at

---

[3] Undersigned counsel has no information to justify a belief in this allegation. Furthermore, there is some question as to whether the Morgan Creek which was KII's creditor was the same Morgan Creek Corporation listed in the records of the Texas Secretary of State. For purposes of this motion, it is assumed that the allegations of the petition as to Morgan Creek are true.

5

the same time he was an officer and/or director of KII, thereby creating a conflict of interest, (a point which defendants do not stipulate), then he may have some liability to KII. However, the *incorporator* of Morgan Creek would not. His connection to the transaction is too tenuous and he owed KII no such duty. Therefore, there is "no reasonable basis for the district court to predict that the plaintiff might be able to recover against" Mr. Foster as contemplated by the Fifth Circuit in *Smallwood, supra.*

### Claim Against Patrick Reso.

Patrick Reso has been personally named as a defendant herein. The purported cause of action against Mr. Reso is set out in Paragraphs 73-77 of the Petition. In essence, plaintiff claims that Mr. Reso was negligent in the manner in which he advised his client, The Schlinger Foundation and that he failed to cause KII's 8-K forms to be filed. However, The Schlinger Foundation (and Fun Karts, Inc. a corporation it formed) were *adverse* to KII since they were a foreclosing creditor. As attorney for the foreclosing creditor, Mr. Reso owed no duty whatever to KII (and, *a fortiori*, owed no duty to the stockholders of the debtor corporation such as plaintiff). As held by the Louisiana Supreme Court:

> Louisiana subscribes to the traditional, majority view that an attorney does not owe a legal duty to his client's adversary when acting in his client's behalf. A non-client, therefore, generally cannot hold his adversary's attorney personally liable for either malpractice or negligent breach of a professional obligation. The intent of this rule is not to reduce an attorney's responsibility for his or her work, but rather to prevent a chilling effect on the adversarial practice of law and to prevent a division of the loyalty owed a client.
> 
> An attorney's duty is to zealously represent his client. To accomplish this obligation, adversarial counsel must not be hampered by fear of personal liability for negligently injuring his client's opponent. The attorney's paramount duty is to his client. As such, not even the Rules of Professional Conduct create actionable duties for negligent injury of a client's adversary or negligent breach of professional obligations which might run in favor of his client's adversary. *Penalber v. Blount*, 550 So.2d 577, 581 (La. 1989) citations omitted.

6

As can be seen from the Affidavit of Mr. Reso attached hereto as Exhibit "A", he represented The Schlinger Foundation and Fun Karts, Inc. Both of these parties were adverse to KII in the foreclosure. Mr. Reso was hired to foreclose on KII. Therefore, under the rulings of the Louisiana Supreme Court, Mr. Reso owed *no duty* to KII. *A fortiori*, he owed no duty to the shareholders of KII to protect the value of their stock in KII. Therefore, there is "no reasonable basis for the district court to predict that the plaintiff might be able to recover against" Mr. Reso as contemplated by the Fifth Circuit in *Smallwood, supra*.

### Federal Question Jurisdiction

Even if the parties were not diverse, there would still be federal jurisdiction because plaintiff has pled a cause of action based on federal law. As noted above, plaintiff's claim is based on the deterioration in the value of stock he owned in a publicly traded company, KII. Plaintiff has several theories as to why defendants are responsible for this decline in his stock value. Certainly, plaintiff has in several places alleged that this was caused by negligence of various parties (presumably a state law cause of action). However, it is equally clear that, in addition to negligence, plaintiff has also alleged *federal* securities law claims against defendants. For example, paragraph 27 of the petition states:

> It is alleged that when Schlinger Foundation and Morgan Creek were devising a plan for the reorganization of the debts of KII, secured by KII's assets, no USSEC 8-K Form was filed advising the public and the shareholders that a major financial transaction was taking place as required by USSEC regulations.

Also, paragraph 31 of the petition alleges:

> KII did not file a USSEC 8-K Form reporting to its shareholders and the public that it was transferring a major asset, the remaining leasehold, to another entity, Fun Karts, Inc., which is required by USSEC regulations.

Thus, the petition has based it causes of action, in part, upon at least two alleged violations of federal securities law. Both of these violations arise out of alleged failures to file Forms 8-K, once by the Schlinger Foundation and Morgan Creek when they were planning to foreclose on KII, and once by KII when it assigned its lease to Fun Karts.

The Form 8-K is used by a corporation to report certain information to the SEC as a way of disclosing that information to the public, generally. As another court has explained,

> [a] Form 8-K is the SEC form used for companies' current reports pursuant to Sections 13 and 15(d) of the Exchange Act, 15 U.S.C. §§ 78m(a)(2), 78o(d). A Form 8-K must be filed upon the occurrence of certain significant corporate events as defined by the SEC and may be filed with respect to any other matter the company considers of material importance. *In Re Worldcom, Inc. Securities Litigation,* 346 F.Supp.2d 628 (S.D.N.Y. 2004) at n. 11.

One of the "significant corporate events" which should be disclosed is the disposition of a significant amount of the corporation's assets. (See Item 2.01 of the 8-K report, which can be found on the SEC's web site at http://www.sec.gov/about/forms/form8-k.pdf).

In this case, the plaintiff claims that defendants, in two instances, should have filed or caused KII to file a Form 8-K (as required to supplement its earlier 10–Q and 10–K reports). Filing of Forms 8–K is required by *federal* law. In particular, it is required by 17 C.F.R. 240.13a–11. The issue of who has a duty to file such forms or to cause them to be filed is one of federal law. Failure to file an 8-K when required can give rise to a claim under Rule 10b-5. That rule makes it unlawful to, *inter alia*,

> to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.... 17 C.F.R. 240.10b–5.

This rule was enacted by the SEC pursuant to authority granted in §10(b) of the of the Securities Exchange Act of 1934 (Exchange Act), 48 Stat. 891, 15 U.S.C. § 78j(b). Thus, violation of Rule 10b-5 is also a violation of 15 U.S.C. § 78j(b).

Thus, the allegations in the petition clearly attempt to state a federal cause of action, giving rise to federal question jurisdiction.

**<u>Alleged Defect in Removal Procedure</u>**

Plaintiff has alleged that the removal was improper because all defendants did not timely join in the removal. However, it is not necessary for all defendants to join in a removal petition, but only those defendants that have been served in the state court action. As the Fifth Circuit has stated

> in order to comply with the requirements of [28 U.S.C.] § 1446, all *served* defendants must join in the removal petition filed prior to the expiration of the removal period. This rule simply requires that there be some timely filed written indication from each *served* defendant, or from some person or entity purporting to formally act on its behalf in this respect and to have the authority to do so, that it has actually consented to such action. *Gillis v. Louisiana,* 294 F.3d 755, 759 (5th Cir. 2002), citations and internal quotations omitted, emphasis supplied.

As of the date the removal notice was filed, the only defendants who had been served were Patrick Reso and Fun Karts, Inc. Both of these defendants joined in the removal petition.

Plaintiff also alleged that the removal petition did not adequately explain the absence of some defendants. This is not true. The Notice of Removal explicitly stated that defendants Patrick Reso and Fun Karts, Inc. had been served with the petition[4] and that "[n]o other defendants in this action have been served with process as of this date".

Though it was not necessary as a matter of law, these defendants also stated in the Notice of Removal that attempts had been made to contact *all* defendants, whether served or not, to

---

[4] The Notice of Removal erroneously listed the date of service upon Mr. Reso and Fun Karts, Inc. The date they were served is accurately reflected on the state court service return filed herein as November 5, 2004.

9

obtain their consent to removal.  All that were contacted consented (and later filed written evidence of this consent).  These actions, though not legally required, showed that defendants made more than a good faith effort to comply not only with the letter, but also the spirit of the law.  If the legal standard required consent of *all* defendants, whether served or not, it would make many multi-defendant cases like this one non-removable as a practical matter.  For instance, one defendant herein, Timotheous Pettinger/benHarold has *still not been served to this day in this matter* because no one can seem to locate him.  The same difficulty—locating the Mr. benHarold—that has prevented plaintiff from serving this defendant has also prevented undersigned counsel from obtaining his consent to removal.  Therefore, a rule require all defendants to join in a removal, whether served or not, would be contrary not only to the Fifth Circuit's formulation of the rule, but also contrary to common sense.

## CONCLUSION

For the reasons given hereinabove, defendants respectfully pray that the motion to remand this action to state court be denied.

Respectfully submitted this 7th day of February, 2005.

SEALE & ROSS, P.L.C.

_____
T. JAY SEALE, III           #11901
KENNETH L. ROSS           #11475
GLEN R. GALBRAITH, T.A.   #23087
200 NORTH CATE STREET
P. O. DRAWER 699
HAMMOND, LA  70404
(985) 542-8500
FAX (985) 542-4111
*Attorneys for Karts International, Inc., and Fun Karts, Inc.*

CERTIFICATE OF SERVICE
I certify that a copy of the foregoing has been served upon counsel for all parties to this proceeding, by mailing the same to each by First Class United States mail, properly addressed and postage prepaid on this 7th day of February 2005.

_____

10

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHARLES BRISTER** | **CIVIL ACTION: 04-3247** |
| **VERSUS** | **SECTION: R-VANCE** |
| **SCHLINGER FOUNDATION, ET AL** | **MAGISTRATE: 1 - SHUSHAN** |

∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎

**AFFIDAVIT OF PATRICK K. RESO**

∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎∎

STATE OF LOUISIANA

PARISH OF TANGIPAHOA

**BEFORE ME**, the undersigned authority, personally came and appeared **PATRICK K. RESO**, who, after being duly sworn, did depose and state:

1.

He has read the allegations of the Petition herein.

2.

At all times material to the facts alleged herein, he represented The Schlinger Foundation and Fun Karts, Inc.

3.

The Schlinger Foundation was a major creditor of Karts International, Inc. ("KII").

4.

The Schlinger Foundation transferred the secured obligations of KII to a newly created corporation, Fun Karts, Inc.

**EXHIBIT A**

5.

He was instructed to foreclose on assets of KII on behalf of Fun Karts, Inc.

6.

At no time material to this litigation did he ever represent Karts International, Inc., nor Charles Brister.

7.

He makes this Affidavit based upon his own personal knowledge.

_____
PATRICK K. RESO

Sworn to and subscribed before me on this 7th day of February 2005.

_____
NOTARY PUBLIC

Glen R. Galbraith, **Notary Public**
200 N. Cate St., Hammond, **LA 70401**
State of **Louisiana, Bar roll# 23087**
My commission expires at death