UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CHARLES BRISTER                              CIVIL ACTION

VERSUS                                       NO: 04-3247

SCHLINGER FOUNDATION, ET AL.                 SECTION: "R"(1)

### ORDER AND REASONS

The plaintiff, Charles Brister, moves to remand this action to state court. For the following reasons, the Court DENIES plaintiff's motion.

I.  BACKGROUND

Plaintiff Charles Brister is a shareholder and former executive of Karts International, Inc. Plaintiff alleges, in essence, that certain of the defendants carried out a plan to transfer KII's assets to other entities that they controlled for their personal benefit. Plaintiff asserts various claims sounding in fraud, breach of fiduciary duty and negligence against a large group of defendants. Only a few of those claims are relevant to this motion, but for the sake of clarity, a brief

recitation of the background facts is appropriate.  For purposes of this motion, the Court considers all factual allegations in the light most favorable to the plaintiff and resolves all contested issues of fact in the plaintiff's favor.  *See Jade Marine, Inc. v. Detroit Diesel Corp.*, No. Civ.A. 02-2907, 2002 WL 31554012, at *1 (E.D. La. Nov. 15, 2002).

Plaintiff is a shareholder of KII, a publicly-traded Nevada corporation.  From January 1999 to June 2001, plaintiff served as the president of KII, and from June 2001 to June 2002, plaintiff was the chairman of KII's board of directors.

In June 2000, defendant the Schlinger Foundation became the majority shareholder of KII.  Defendants Dr. Evert I. Schlinger and Evert I. "Pete" Schlinger, Jr. were members of the Schlinger Foundation's board and controlled the operations of the Foundation.  After it became KII's majority shareholder, the Schlinger Foundation appointed defendant Timotheous Pettinger, a/k/a Timotheous benHarold, along with nonparties Blair Smith and Geoffrey Thayer, to KII's board of directors.  Pettinger allegedly took over the day-to-day control and operation of KII after his appointment to the board, and plaintiff was thereafter excluded from the management and decision-making processes at KII.

Plaintiff alleges that Pettinger and Pete Schlinger did not

operate KII for the purpose of earning a profit for its shareholders.  Instead, Pettinger and Pete Schlinger operated KII for their personal benefit and for the benefit of certain corporate entities to which they had ties, *i.e.*, defendants Morgan Creek Company and The Office of the Presiding Almoner of Living Waters ("Living Waters").

Plaintiff alleges that Morgan Creek was created by defendant Russell Frank Foster at the request of Pettinger and that Morgan Creek served as Pettinger's alter-ego.  Plaintiff further alleges that Pettinger obtained a rubber stamp of Foster's signature so that he could act on behalf of Morgan Creek at any time without Foster's knowledge or consent.

Plaintiff claims that Pete Schlinger created Living Waters ostensibly as a religious entity, but that it was in fact created to serve as Pete Schlinger's alter-ego for the purpose of transferring funds from KII for the benefit of Pete Schlinger and other defendants.

In early 2002, the Schlinger Foundation and Morgan Creek allegedly created a plan to transfer virtually all of KII's assets without the knowledge or consent of KII's shareholders.  In the spring of 2002, the Foundation and Morgan Creek entered into financial arrangements through which they obtained the majority of KII's indebtedness, secured by KII's assets.  The

Schlinger Foundation and Morgan Creek then transferred KII's debt to Fun Karts, Inc., a newly-formed Delaware corporation owned by the Foundation and Morgan Creek.  Timotheous Pettinger's brother, defendant John Pettinger, was the president of Fun Karts.  Fun Karts foreclosed on the assets of KII and later purchased those assets at a sheriff's sale for $877.93.  After the foreclosure, plaintiff alleges, Timotheous Pettinger also assigned the seven remaining years of KII's lease for a 40,000 square-foot plant to Fun Karts for no consideration.

Plaintiff further alleges that the Schlinger Foundation and/or Morgan Creek were obligated to, but did not, cause KII to file Form 8-Ks with the United States Securities and Exchange Commission when they devised the plan to reorganize KII's debts, when they created Fun Karts for the purpose of foreclosing on KII's assets, and when KII transferred its plant lease to Fun Karts.

In addition to the defendants the Court has already identified, plaintiff's complaint names as defendants Patrick K. Reso and William Rogers, two attorneys whom plaintiff alleges were retained by the Schlinger Foundation and Morgan Creek. Plaintiff asserts that these defendants advised the Foundation and Morgan Creek to incorporate Fun Karts.  Plaintiff also alleges that Reso and Rogers negligently failed to advise the

4

Schlinger Foundation and Morgan Creek of their fiduciary duties and their responsibility to make required SEC filings.

Finally, plaintiff claims that his investment in KII, valued at $1,929,709.00 in June 2002, became worthless as a result of the defendants' actions.

This action originally was filed in Louisiana state court on October 29, 2004. On November 29, 2004, Fun Karts and Reso removed the action to this Court. The Schlinger Foundation, Rogers, Evert Schlinger, Pete Schlinger, Living Waters and Foster later consented to the removal.[1]

Plaintiff now moves to remand the action to state court. Plaintiff first argues that the notice of removal filed by Fun Karts and Reso was procedurally flawed. Plaintiff also argues that this Court does not possess original jurisdiction over this action. *See* 28 U.S.C. § 1441(a). Specifically, plaintiff asserts that his complaint does not allege a federal cause of action and that complete diversity does not exist because plaintiff, a Louisiana resident, has properly named two other Louisiana residents — Foster and Reso — as defendants.

Defendants contend that the notice of removal was not

---

[1] Defendant John Pettinger did not file a consent to removal, but he has answered the complaint. Defendants Morgan Creek and Timotheous Pettinger have not appeared in this action.

defective and that diversity jurisdiction exists because defendants Foster and Reso were fraudulently joined in order to defeat diversity jurisdiction. Defendants also argue that removal was proper because the complaint asserts a cause of action under federal law.

## II. DISCUSSION

### A. Legal Standard

A defendant may generally remove a civil action filed in state court if the federal court has original jurisdiction over the action. *See* 28 U.S.C. § 1441(a). The removing party bears the burden of showing that federal jurisdiction exists. *See Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995). The Court examines the jurisdictional facts that support removal as of the time of removal. *See Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000); *Asociacion Nacional de Pescadores a Pequena Escala O Artesanales de Colombia ("ANPAC") v. Dow Quimica de Colombia S.A.*, 988 F.2d 559, 565 (5th Cir. 1993), *abrogated on other grounds by Marathon Oil Co. v. Ruhrgas*, 145 F.3d 211 (5th Cir. 1998), *rev'd on other grounds*, 526 U.S. 574 (1999); *Bonck v. Marriott Hotels, Inc.*, No. Civ.A. 02-2740, 2002 WL 31890932, at *1 (E.D. La. Dec. 30, 2002). The Court must remand the case to state court "[i]f at any time before final

judgment it appears that the district court lacks subject matter jurisdiction."  28 U.S.C. § 1447(c)).

**B.   The Rule of Unanimity**

The Fifth Circuit has interpreted the removal procedures of 28 U.S.C. §§ 1446(a) and (b) to require that all properly served defendants join in a notice of removal.  *See Gillis v. Louisiana*, 294 F.3d 755, 759 (5th Cir. 2002); *Doe v. Kerwood*, 969 F.2d 165, 167 (5th Cir. 1992); *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1262-63 (5th Cir. 1988).  This rule does not require that all served defendants actually sign the notice of removal. *See Getty Oil*, 841 F.2d at 1262 n.11; *Clark v. Field Inspection Serv.*, Civ. A. No. 94-192, 1994 WL 180278, at *2 (E.D. La. May 5, 1994).  Instead, the rule requires only that there be "some timely filed written indication from each served defendant, or from some person or entity purporting to formally act on its behalf in this respect and to have authority to do so, that it has consented to such action."  *Getty Oil*, 841 F.2d at 1262 n.11. But, to consent to removal, each properly served defendant "must join in the petition no later than thirty days from the day on which the first defendant was served."  *Id*. at 1263.  This rule does not apply, however, if the nonjoining defendant was not served yet when the removal petition was filed.  *Id.* at 1262 n.9.

Plaintiff argues that removal was improper because all of the defendants did not join the removal petition. At the time of removal, only Reso and Fun Karts had been served with process. (*See* Notice of Removal ¶¶ 8, 10). Further, Reso and Fun Karts stated in the Notice of Removal that no other defendants had been served. (*Id.* ¶ 10). This case therefore satisfies the exception to the unanimity rule that applies when the nonjoining defendants have not been served with process at the time the notice of removal is filed. Thus, although Reso and Fun Karts contacted and obtained the consent of most of the other defendants, they had no legal obligation to do so. In multiple-defendant cases such as this, "if a defendant is . . . served after the case is removed, [that] defendant may . . . either accept the removal or exercise its right to choose the state forum by making a motion to remand." *Getty Oil*, 841 F.2d at 1253. Accordingly, the Court finds that the removal procedure was not defective, and the Court will not remand the action on this ground.

C.  **Fraudulent Joinder**

Defendants contend that plaintiff fraudulently joined Louisiana residents Foster and Reso in order to defeat diversity jurisdiction. Fraudulent joinder is established by showing "'(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against

the non-diverse [defendant] in state court.'" *Gray v. Beverly Enters.-Miss., Inc.*, 390 F.3d 400, 405 (5th Cir. 2004)(quoting *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003)). To demonstrate fraudulent joinder, the defendant must establish that the plaintiff has no reasonable possibility of recovery in state court. *Id*.

The burden of persuasion on a defendant who asserts fraudulent joinder is a heavy one. *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 462 (5th Cir. 2003)(citing *Travis*, 326 F.3d at 648). Although this burden rests with the removing party, a plaintiff may not rest upon mere allegations in his pleadings. *Gray*, 390 F.3d at 405. To determine whether a plaintiff has a reasonable possibility of recovery in state court, the Court "may 'pierce the pleadings' and consider summary judgment-type evidence." *Id*. (quoting *Travis*, 326 F.3d at 648-49). In making this inquiry, however, the Court "'must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff.'" *Ross*, 344 F.3d at 463 (quoting *Travis*, 326 F.3d at 649). The Court must also resolve all disputed questions of fact and any ambiguities in state law in favor of the plaintiff. *Gray*, 390 F.3d at 405.

Defendants do not claim that plaintiff has fraudulently pleaded any jurisdictional facts. Accordingly, the only issue that the Court must resolve is whether plaintiff has any reasonable possibility of recovery against either Foster or Reno. If he does, then the Court does not have diversity jurisdiction.

*(1)   Russell Foster*

Plaintiff alleges that Foster created Morgan Creek, which served as the alter-ego of Timotheous Pettinger. Plaintiff asserts a claim of negligence against Foster based on allegations that (i) Foster knew or should have known that Morgan Creek was Pettinger's alter-ego; (ii) Foster knew or should have known that Pettinger operated Morgan Creek for the purpose of defrauding KII; (iii) Foster gave Pettinger a rubber stamp of his signature, which allowed Pettinger to operate Morgan Creek without Foster's oversight; and (iv) Foster failed to manage or oversee the operations of Morgan Creek. At bottom, plaintiff's claim against Foster is that he negligently mismanaged Morgan Creek.[2]

---

[2] In his brief, plaintiff argues that his allegations against Foster show negligence "and/or an attempt to defraud" by Foster. (*See* Pl. Mem. at 6). Even construing all allegations in plaintiff's favor, as the Court is obliged to do, it is apparent from plaintiff's complaint that his claim against Foster sounds only in negligence, not in fraud. (*See* Compl. ¶¶ 62-65 (alleging that Foster "was negligent in that he knew or should have known" of Pettinger's malfeasance). The Court "need not consider the viability of causes of action *not* alleged in the state court complaint." *Jade Marine, Inc. v. Detroit Diesel Corp.*, No.

Although some of plaintiff's allegations can be read as suggesting that Foster did nothing more than incorporate Morgan Creek, a generous reading of the complaint reveals that plaintiff has alleged that Foster also served as an officer or director of Morgan Creek.  Plaintiff's claim that Foster failed to manage or oversee Morgan Creek arguably presupposes that Foster held a position of management or oversight.  Likewise, the allegation that Pettinger needed a rubber stamp of Foster's signature so that he could conduct Morgan Creek's business without Foster's knowledge or consent suggests the same thing.  Plaintiff also identifies Foster as a member of Morgan Creek's board of directors in the service list at the end of the complaint. Reading the complaint liberally, the Court concludes that plaintiff has sufficiently alleged that Foster was an officer or director of Morgan Creek.  The remaining issue is whether plaintiff would have a reasonable possibility of recovery in state court on the claim that Foster negligently performed his duties as an officer or director of Morgan Creek.

As a preliminary issue, the Court must determine which state's law a Louisiana court would apply to determine whether Foster can be held personally liable for his alleged negligence.

---

Civ.A. 02-2907, 2002 WL 31554012, at *2 (E.D. La. Nov. 15, 2002).

In a diversity case such as this, the Court applies the choice of law rules of the forum state in determining which state's substantive law to apply.  *See Mumblow v. Monroe Broad., Inc.*, 401 F.3d 616, 620 (5th Cir. 2005) (citing *Woodfield v. Bowman*, 193 F.3d 354, 359 n.7 (5th Cir. 1999)).  Louisiana's general choice of law provision directs that the applicable law on any issue is "the law of the state whose policies would be most seriously impaired if its law were not applied to that issue." La. Civ. Code Ann. art. 3515.  In making this determination, the Court must consider

> (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

*Id.*

The policies of two states — Texas, Morgan Creek's alleged state of incorporation, and Louisiana, plaintiff's domicile — are implicated by the Court's choice of law determination on this issue.  Texas has a legitimate interest in regulating the businesses that are organized under its laws.  In particular, Texas has an interest in determining the scope of the duties and liabilities of officers and directors of Texas corporations.

Louisiana, on the other hand, has a legitimate interest in protecting its citizens. Louisiana's interest is somewhat attenuated in this case, however, because plaintiff sues as a shareholder of KII, a foreign corporation. Further, there is no allegation that Morgan Creek ever did business in Louisiana or committed any acts in Louisiana. Thus, the Court finds that Texas has a closer relationship to this aspect of the dispute than does Louisiana.

Consideration of the policies underlying the interstate system also supports applying Texas law to this issue. Applying the law of the state of incorporation to determine the scope of personal liability for corporate officers and directors promotes the interstate policies of "certainty, predictability and uniformity of result." Restatement (Second) of Conflict of Laws § 302 cmt. e (1971); *cf. id.* ("Uniform treatment of directors, officers and shareholders is an important objective which can only be attained by having the rights and liabilities of those persons with respect to the corporation governed by a single law."). Those policies would be undermined in this case by the application of Louisiana law, particularly because there is nothing to indicate that Morgan Creek conducted any business in Louisiana or had any other connection to the state such that the corporation or its officers and directors would have reason to

anticipate that they would be subject to Louisiana law. *See* La. Civ. Code Ann. art. 3515 & cmt. (directing courts to attempt to "minimiz[e] the adverse consequences that might follow from subjecting a party to the law of more than one state").

Moreover, both the Fifth Circuit and this Court have previously held that a Louisiana court would apply the law of the state of incorporation to similar issues. *See Patin v. Thoroughbred Power Boats Inc*, 294 F.3d 640, 646-47 (5th Cir. 2002) (applying law of state of incorporation to issue of whether to pierce the corporate veil); *San Francisco Estates, S.A. v. Westfeldt Bros.*, No. 97-1102, 1998 U.S. Dist. LEXIS 201, at *11-12 (E.D. La. Jan. 13, 1998) (same); *see also Bisso Marine Co. v. Conmaco, Inc.*, No. 99-227, 1999 U.S. Dist. LEXIS 15855, at *6-7 (E.D. La. Oct. 7, 1999) (applying law of state of incorporation to determine whether dissolved corporation could be sued); Restatement (Second) of Conflict of Laws § 309 (1971) ("The local law of the state of incorporation will be applied to determine the existence and extent of a director's or officer's liability to the corporation, its creditors and shareholders . . . ."). Accordingly, the Court finds that a Louisiana court would apply the law of Texas, Morgan Creek's state of incorporation, to determine whether Foster, as an officer or director of Morgan Creek, can be liable to a third-party on the facts alleged here.

Under Texas law, "[t]he general rule is that officers of a corporation are insulated from personal liability arising from their activities performed in the scope of their duties for the corporation." *Portlock v. Perry*, 852 S.W.2d 578, 582 (Tex. App. 1993); *Maxey v. Irish*, 457 S.W.2d 87, 90 (Tex. Civ. App. 1970) ("Directors are not ordinarily liable for . . . negligence."); 15 Tex. Jur. *Corporations* § 366 ("Corporate directors are generally not liable for alleged negligence in failing to learn of and prevent acts causing damage to third parties."). Texas courts will, however, hold an officer or director individually liable if he or she "knowingly participates in the [tortious] conduct[,] has knowledge of the tortious conduct, either actual or constructive," or otherwise assumes a duty of care to the third party. *Portlock*, 852 S.W.2d at 582-83. Liberally construed, the complaint does allege that Foster had constructive knowledge that Pettinger was using Morgan Creek as his alter-ego to defraud KII. (*See Compl.* ¶¶ 62-64 (alleging that Foster "knew or should have known" of Pettinger's misconduct)). Although it is far from pellucid that plaintiff's allegations are sufficient under Texas law, keeping in mind the Court's obligation to resolve ambiguities in state law in favor of plaintiff, the Court concludes that there is at least a reasonable possibility that plaintiff's allegations might state a claim under Texas law.

Nonetheless, plaintiff cannot recover against Foster because any claim against Foster on the facts alleged belongs to KII, not to plaintiff personally. In a diversity case, the Court applies state law to determine whether a shareholder may maintain an action individually or whether the action must be brought as a derivative action on behalf of the corporation. *See Atkins v. Hibernia Corp.*, 182 F.3d 320, 323 (5th Cir. 1999) ("[S]tate law determines whether, and in what manner, a shareholder may assert an action based on a corporate officer's or director's breach of fiduciary duty." (citing *Crocker v. FDIC*, 826 F.2d 347, 349 (5th Cir. 1987)). For the reasons stated earlier, a Louisiana court would apply the law of the state of incorporation to matters concerning intracorporate rights and obligations. *See also* Restatement (Second) of Conflict of Laws § 302 & cmt. e (1971) (matters concerning shareholders' rights and obligations with respect to the corporation generally governed by law of state of incorporation). Whether a shareholder is permitted to sue on his own behalf for harms suffered by the corporation is clearly such an issue. Plaintiff alleges that KII is a Nevada corporation, so the Court will look to Nevada law to determine whether his claim is individual or derivative in nature.

Nevada law would not permit plaintiff to recover on the facts alleged. Under Nevada law, a claim that seeks to redress

harm to the corporation must be brought as a derivative action even though individual shareholders also suffer a decline in the value of their shares.  *See Cohen v. Mirage Resorts, Inc.*, 62 P.2d 720, 733-34 (Nev. 2003) (allegations of mismanagement resulting in lost revenues concern "harm to the corporation shared by all stockholders and not related to an individual stockholder").  Plaintiff alleges that, because of Foster's negligence, Pettinger was able to use Morgan Creek to defraud KII.  (*See, e.g.*, Compl. ¶ 63 (Pettinger used Morgan Creek "for the purposes of defrauding KII" out of "assets properly belonging to KII")).  Plaintiff does not allege that Foster's negligence caused him any individual harm (other than a decline in the value of his KII shares), or that Foster breached any duty owed to plaintiff individually.  Accordingly, any claim against Foster could be brought only derivatively on behalf of KII.  Plaintiff has not attempted to assert a derivative claim here.  Thus, plaintiff has no reasonable possibility of recovering against Foster, and the Court finds that Foster was fraudulently joined.

   *(2)  Patrick Reso*

Plaintiff alleges that defendant Reso, a Louisiana lawyer, advised the Schlinger Foundation and Morgan Creek in connection with the events underlying this suit.  Specifically, plaintiff alleges that the Schlinger Foundation and Morgan Creek

incorporated Fun Karts on the basis of Reso's advice.  Plaintiff makes two types of negligence allegations against Reso.  First, plaintiff asserts that Reso acted negligently by failing to advise the Schlinger Foundation that, as KII's majority shareholder, it had a fiduciary duty to KII's minority shareholders, including plaintiff, to protect the value of their investments in KII stock.  Second, plaintiff claims that Reso negligently failed to advise the Foundation and Morgan Creek that KII was required to file Form 8-Ks with the SEC when they decided to reorganize KII's debts, when they formed Fun Karts for the purpose of foreclosing on KII's assets, and when Pettinger, on behalf of KII, transferred KII's plant lease to Fun Karts.  Plaintiff argues that Reso's failure to ensure that those disclosure documents were timely filed constitutes negligence *per se* under Louisiana law.

Because, as a general rule, an attorney does not owe third parties any legal duty when he or she is acting on the client's behalf, Louisiana law does not permit nonclients to maintain claims against attorneys for negligent performance of professional duty.  *See Montalvo v. Sondes*, 637 So. 2d 127, 130 (La. 1994) ("A non-client . . . cannot hold his adversary's attorney personally liable for either malpractice or negligent breach of a professional obligation.").  Louisiana courts have

also applied this rule to suits by third-parties who assert a connection to the attorney's client.  *See Berard v. Coregis Ins. Co.*, 764 So. 2d 1012, 1015 (La. Ct. App. 2000) ("The duty to act in a competent manner . . . is owed to the attorney's client, not to a major client's parents."); *Desire Narcotics Rehab. Ctr. v. White*, 732 So. 2d 144, 145-46 (La. Ct. App. 1999) (holding that client's employees could not bring negligence or malpractice claim against client's attorney).  The exception to this rule is that a nonclient may sue an attorney for intentional torts that the attorney commits in the course of representing a client.  *Montalvo*, 637 So. 2d at 130.

Plaintiff is a shareholder and an executive of KII who does not allege that Reso was his attorney, or even that Reso was KII's attorney.  Rather, plaintiff alleges only that Reso represented the Schlinger Foundation and Morgan Creek.  Accordingly, regardless of whether Reso's alleged negligence breached any duty *to his clients*, he owed no such duty to plaintiff, a shareholder of a public company in which his clients held a stake.  Moreover, plaintiff has not alleged any conduct by Reso that could be actionable as an intentional tort.

Plaintiff's argument that KII's failure to timely file Form 8-Ks with the SEC constitutes negligence *per se* is off the mark.  As an initial matter, Reso was not KII's attorney, so Reso owed

no duty to KII to advise it to comply with SEC regulations. In any event, the theory of negligence *per se*, which addresses the appropriate standard of care, is simply not relevant unless Reso owed a duty *to plaintiff*. *See Gray*, 390 F.3d at 407 ("[T]he theory of negligence *per se* does not speak to the relevant question of whether the in-state defendants owed any duty of care to the plaintiffs."). He did not, and the Court therefore concludes that Reso was also fraudulently joined.[3]

## III. CONCLUSION

For the reasons discussed above, the Court finds that defendants' removal of this action was proper. Accordingly, the Court DENIES plaintiff's motion to remand and ORDERS that defendants Foster and Reso be dismissed from the case.

New Orleans, Louisiana, this 27th day of July, 2005.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[3] Because the Court finds that both of the in-state defendants were fraudulently joined, it does not reach defendants' additional claim that removal was proper because the complaint alleges violations of the federal securities laws.