UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


CHARLES BRISTER                              CIVIL ACTION

VERSUS                                       NO: 04-3247

SCHLINGER FOUNDATION, ET AL.                 SECTION: "R"(1)


ORDER AND REASONS

Defendants Fun Karts, Inc. and the Schlinger Foundation move to dismiss this action.  For the following reasons, the Court GRANTS the motion.


I.   BACKGROUND

Plaintiff Charles Brister is a shareholder and former executive of Karts International, Inc.  Plaintiff alleges, in essence, that certain of the defendants carried out a plan to transfer KII's assets to other entities that they controlled for their personal benefit.  Plaintiff asserts various claims sounding in fraud, breach of fiduciary duty and negligence against a large group of defendants.  For purposes of this

motion, the Court considers all factual allegations in the light most favorable to the plaintiff and resolves all contested issues of fact in the plaintiff's favor. *See Jade Marine, Inc. v. Detroit Diesel Corp.*, No. Civ.A. 02-2907, 2002 WL 31554012, at *1 (E.D. La. Nov. 15, 2002).

Plaintiff is a shareholder of KII, a publicly-traded Nevada corporation. From January 1999 to June 2001, plaintiff served as the president of KII, and from June 2001 to June 2002, plaintiff was the chairman of KII's board of directors.

In June 2000, defendant the Schlinger Foundation became the majority shareholder of KII. Defendants Dr. Evert I. Schlinger and Evert I. "Pete" Schlinger, Jr. were members of the Schlinger Foundation's board and controlled the operations of the Foundation. After it became KII's majority shareholder, the Schlinger Foundation appointed defendant Timotheous Pettinger, a/k/a Timotheous benHarold, along with nonparties Blair Smith and Geoffrey Thayer, to KII's board of directors. Pettinger allegedly took over the day-to-day control and operation of KII after his appointment to the board, and plaintiff was thereafter excluded from the management and decision-making processes at KII.

Plaintiff alleges that Pettinger and Pete Schlinger did not operate KII for the purpose of earning a profit for its

shareholders.  Instead, Pettinger and Pete Schlinger operated KII for their personal benefit and for the benefit of certain corporate entities to which they had ties, *i.e.*, defendants Morgan Creek Company and The Office of the Presiding Almoner of Living Waters ("Living Waters").

Plaintiff alleges that Morgan Creek was created by defendant Russell Frank Foster at the request of Pettinger and that Morgan Creek served as Pettinger's alter-ego.  Plaintiff further alleges that Pettinger obtained a rubber stamp of Foster's signature so that he could act on behalf of Morgan Creek at any time without Foster's knowledge or consent.

Plaintiff claims that Pete Schlinger created Living Waters ostensibly as a religious entity, but that it was in fact created to serve as Pete Schlinger's alter-ego for the purpose of transferring funds from KII for the benefit of Pete Schlinger and other defendants.

In early 2002, the Schlinger Foundation and Morgan Creek allegedly created a plan to transfer virtually all of KII's assets without the knowledge or consent of KII's shareholders. In the spring of 2002, the Foundation and Morgan Creek entered into financial arrangements through which they obtained the majority of KII's indebtedness, secured by KII's assets.  The Schlinger Foundation and Morgan Creek then transferred KII's debt

3

to Fun Karts, Inc., a newly-formed Delaware corporation owned by the Foundation and Morgan Creek. Timotheous Pettinger's brother, defendant John Pettinger, was the president of Fun Karts. Fun Karts foreclosed on the assets of KII and later purchased those assets at a sheriff's sale for $877.93. After the foreclosure, plaintiff alleges, Timotheous Pettinger also assigned the seven remaining years of KII's lease for a 40,000 square-foot plant to Fun Karts for no consideration.

Plaintiff further alleges that the Schlinger Foundation and/or Morgan Creek were obligated to, but did not, cause KII to file Form 8-Ks with the United States Securities and Exchange Commission when they devised the plan to reorganize KII's debts, when they created Fun Karts for the purpose of foreclosing on KII's assets, and when KII transferred its plant lease to Fun Karts.

In addition to the defendants the Court has already identified, plaintiff's complaint names as defendants Patrick K. Reso and William Rogers, two attorneys whom plaintiff alleges were retained by the Schlinger Foundation and Morgan Creek. Plaintiff asserts that these defendants advised the Foundation and Morgan Creek to incorporate Fun Karts. Plaintiff also alleges that Reso and Rogers negligently failed to advise the Schlinger Foundation and Morgan Creek of their fiduciary duties

and their responsibility to make required SEC filings.

Finally, plaintiff claims that his investment in KII, valued at $1,929,709.00 in June 2002, became worthless as a result of the defendants' actions.

This action originally was filed in Louisiana state court on October 29, 2004.  On July 28, 2005, the Court denied plaintiff's motion to remand and ordered that defendants Foster and Reso be dismissed from the case.  (R. Doc. 17).

Defendants Fun Karts and Schlinger Foundation now move to dismiss the case, arguing that Nevada law precludes an individual suit to recover the lost value of shares of a public corporation. Such a suit, defendants argue, is properly brought on behalf of the shareholders as a derivative suit.  Brister argues that the allegations in the complaint are sufficient to support a direct claim against the defendants for, among other things, fraud and breach of fiduciary duty.

**II.  Legal Standard – Rule 12(b)(6)**

In a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must accept all well-pleaded facts as true and view the facts in the light most favorable to the plaintiff.  *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *American Waste & Pollution Control Co. v. Browning-Ferris,*

*Inc.*, 949 F.2d 1384, 1386 (5th Cir. 1991).  The Court must resolve doubts as to the sufficiency of the claim in plaintiff's favor.  *Vulcan Materials Company v. City of Tehuacana*, 238 F.3d 382, 387 (5th Cir. 2001).  A motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982).  Dismissal is typically warranted only if it appears certain that the plaintiff cannot prove any set of facts in support of her claim that would entitle her to relief.  *Id.; Piotrowski v. City of Houston*, 51 F.3d 512, 514 (5th Cir. 1995) (quoting *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir. 1994)).

### III.  DISCUSSION

In its denial of Brister's motion to remand, this Court found Nevada law to be controlling in this case.  (R. Doc. 17 at p. 16).  The Court cited *Cohen v. Mirage Resorts, Inc.*, 119 Nev. 1 (2003), for the proposition that a "claim that seeks to redress harm to the corporation must be brought as a derivative action even though individual shareholders also suffer a decline in the value of their shares."  (R. Doc. 17 at pp. 16-17).  The Court further noted that Brister "has not attempted to assert a derivative claim" in this case."  *Id.* at 17.  Defendants now

argue that, for these reasons, the Court should dismiss the case in its entirety, because the damages sought are for the diminution in value of Brister's shares.

A derivative suit is brought on behalf of the corporation by individual shareholders to enforce the corporation's rights. *See Shoen v. SAC Holding Corp.*, 137 P.3d 1171, 1179 (Nev. 2006). Nevada law also recognizes that individual directors and officers may be personally liable in a direct action for breach of fiduciary duty if the breach results from intentional misconduct, fraud, or a knowing violation of the law. *Id.* at 1184 (citing NRS 78.138(7)). This is consistent with laws in other states that provide personal liability for such wrongdoing. *See, e.g., Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1036-39 (Del. 2004); *Higgins v. NYSE*, 10 Misc.3d 257, 266 (N.Y. Sup. 2005).

The question of whether a suit may be brought as a derivative or a direct suit has been the subject of some debate nationwide, but Nevada courts have not discussed it at length. In dealing with similar issues, Nevada courts have looked to Delaware law. *See Shoen*, 137 F.3d at 1179-84. In *Tooley*, *supra*, the Delaware Supreme Court analyzed and clarified the test for determining when a suit is (or must be) derivative and when a suit is direct. *Tooley*, 845 A.2d at 1036-39. The court rejected

a technical rule that an action may not be a direct action if all of the stockholders are equally affected by the alleged wrongdoing. *Id.* at 1038-39. Instead, the court held that the inquiry should focus on the relationship among the claim, the stockholder, and the corporation:

> [A] court should look to the nature of the wrong and to whom the relief should go. The stockholder's claimed direct injury must be independent of any alleged injury to the corporation. The stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation.

*Id.* at 139. This accords with the New York approach, which relies on *Tooley* to distinguish between direct and derivative suits: "the proper inquiry in distinguishing between a direct and a derivative claim is what is the nature of the harm alleged and who is principally harmed: the corporation or the individual shareholders." *Higgins*, 10 Misc.3d at 266 (citation omitted). A Nevada court would look to cases like *Tooley* and *Higgins* to distinguish between direct and derivative claims. For example, the *Cohen* court cited *Parnes v. Bally Entertainment Corp.*, 722 A.2d 1243 (Del. 1999), to conclude that "if [an individual's complaint] seeks damages for wrongful conduct that caused harm to the corporation, it is derivative and should be dismissed." *Cohen*, 119 Nev. at 19 (citing *Parnes*, 722 A.2d at 1245).

In his claim for damages, Brister alleges that he suffered $1,929,709.00 in damages, which is the total diminution in the value of his shares of KII stock as a result of the defendants' alleged looting of KII. Brister makes no claim for damages besides the diminution in the value of his stock. Thus, Brister's injury consists of damages that accrued to the detriment of the entire corporation, which saw its value decrease to zero. Brister does not allege that any particular fraud or breach of duty caused injury to him that was separate from that of the corporation. As the *Higgins* court noted, "[w]hile a decrease in share value is undoubtedly harmful to the individual shareholder, this harm is said to *derive* from the harm suffered principally by the corporation and only collaterally to shareholders, and thus is derivative in nature." *Id.* at 266. The court also stated that "diminution in the value of shares is quintessentially a derivative claim." *Id.* Accordingly, the Court finds that Brister's claim is properly the subject of a derivative claim for injury suffered by the corporation as a result of the decrease in the value of its shares. Because Brister has not attempted to bring a derivative claim on behalf of the corporation but has instead sought damages personally, the case must be dismissed for failure to state a claim upon which relief may be granted.

**III. CONCLUSION**

For the reasons discussed above, the Court GRANTS the defendants' motion to dismiss.

New Orleans, Louisiana, this __10th__ day of January, 2007.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE